(No. 36272.

THE PEOPLE *ex rel.* John E. Pavlik, Appellee, *vs.* MICHAEL J. HOWLETT, Auditor of Public Accounts, Appellant.

*Opinion filed May 19, 1961.*

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellant.

ROMAN E. POSANSKI, and WILLIAM O. KROHN, both of Chicago, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from an order granting a writ of *mandamus* to compel the Auditor of Public Accounts to pay plaintiff, as salary for his services as judge of the city court of Calumet City, at the rate of $7,000 per annum from June 1, 1960. We have jurisdiction on direct appeal, this being a case in which the State has a direct financial interest.

The essential facts are not in dispute. The salary of city judges is fixed by statute and is based on the population of the city involved. The applicable statute (Ill. Rev. Stat. 1959, chap. 37, par. 355) provides for a salary of $6,000 in municipalities having more than 15,000 and not exceeding 24,000 inhabitants, and $7,000 in municipalities having more than 24,000 and not exceeding 37,000 inhabitants. According to the 1950 Federal decennial census, Calumet City had a population of 15,799, and, prior to the commencement of this suit, plaintiff had been receiving a salary of $6,000 per annum. By letter dated May 24, 1960, the district supervisor of the Bureau of the Census of the United States Department of Commerce advised the corporate authorities of Calumet City that, on the basis of the 1960 decennial census, the city had an unofficial population of 24,966. The letter further stated that although "this is unofficial at this time and will not be certified until some months hence by the Census Bureau, Department of Commerce, we feel reasonably sure that the population will not differ greatly from the figure we have made available to you in this letter."

It is plaintiff's theory that the population of the city was established as being over 24,000 on May 24, 1960, and that he thereupon became entitled to receive an annual salary of $7,000 and that he was entitled to the increased salary at least from and after June 1, 1960. The Auditor of Public Accounts, upon demand, refused to pay salary at the in-

creased rate, whereupon plaintiff commenced this *mandamus* proceeding. The complaint set out the facts substantially as stated above and had attached thereto as an exhibit the letter from the District Supervisor of the Bureau of the Census and also a certificate from the city clerk stating that the population of the city according to the census count completed prior to May 24, 1960, was 24,966, that the population is increasing steadily and was, as of the date of the certificate, in excess of 24,966. Defendant moved to dismiss on the ground that the population of the city, for the purpose of determining plaintiff's salary, is to be determined by the official publication of the United States census figures and in no other manner. This motion was overruled, and the defendant having elected to stand on the motion and not to plead further, the court entered a final order directing the issuance of a writ of *mandamus* commanding the Auditor of Public Accounts to draw his warrants for payment of plaintiff's salary at the rate of $7,000 per annum from June 1, 1960.

The only question properly before us on this appeal is whether, under the facts as stated above, the Auditor of Public Accounts was under a clear legal duty to draw his warrants for the payment of plaintiff's salary at the rate of $7,000 per annum from June 1, 1960, so as to justify the issuance of the extraordinary writ of *mandamus*. In our opinion, the release of information as to the unofficial population of the municipality based on the 1960 decennial census was an insufficient circumstance to place the Auditor under such a duty. It may be that a different question would have been presented if the "unofficial" census figure were in all cases the final figure and all that remained to be done to make it "official" was some purely ministerial act of certification. As we understand the procedures of the Bureau of the Census, however, and as the letter relied upon by plaintiff itself indicates, the "unofficial" figure is not necessarily the final figure, but is tentative and subject

to correction and revision. Under these circumstances, we cannot believe that the legislature intended the salary of city judges to be based upon the announcement of the unofficial population figures.

Plaintiff also cites section 1—9 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1959, chap. 24, par. 1—9) for the proposition that the population of a municipality may be determined by a census taken by authority of the municipality itself, and argues that the certificate of the city clerk attached to the complaint amounts to a municipal census. We need not here decide what application, if any, a section defining "population" for the purposes of the Revised Cities and Villages Act has to that term as used in an entirely different statute. Regardless of whether or not population for the purpose with which we are now concerned may be shown by reference to a census taken by the authority of the municipality, there is no showing that any such census was taken. On the contrary, it is obvious that the city clerk based his estimate of the municipal population upon the unofficial Federal figures, and that his certificate adds nothing to plaintiff's case.

No question was raised by defendant as to any possible constitutional or statutory question concerning whether any increase in the salary of a city judge may become effective during the term for which he was elected. Even assuming that the population of the city had been satisfactorily established at over 24,000, these questions would appear to have some relevance as to whether or not plaintiff was entitled to a writ of *mandamus*. However, we do not find it necessary to pass upon these questions, nor do we express any opinion thereon.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*